FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 1 4 2010

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| TOMMY E. TURPEN, JR. and<br>DAVID LOGAN TURPEN,<br>as Co-Administrators for the Estate<br>of TOMMY EUGENE TURPEN<br><br>     Plaintiffs,<br><br>vs.<br><br>DOUGLAS COUNTY,<br>TOM WORTHAN, individually, and<br>in his official capacity as Chairman<br>of the Douglas County Board of<br>Commissioners, FREDDIE ASHMON,<br>JR., individually and in his official<br>capacity as District 1 Douglas County<br>Commissioner,  KELLY ROBINSON,<br>individually and in his official<br>capacity as District 2 Douglas County<br>Commissioner, MIKE MULCARE,<br>individually and in his official<br>capacity as District 3 Douglas County<br>Commissioner, DAVID LATHAM,<br>individually and in his official<br>capacity as District 4 Douglas County<br>Commissioner, ERIC LINTON,<br>individually and in his official<br>capacity as Douglas County<br>Administrator, PHIL MILLER,<br>individually, and in his official capacity<br>as Sheriff of  Douglas County,<br>DOUGLAS  COUNTY SHERIFF'S<br>OFFICE, DR. JIMMY  GRAHAM,<br>individually, RENEE MORRIS, | 1:10-CV-1815-MHS<br><br>Civil Action File No._____ |

individually, **STEPHANIE EVANS,**      *
**individually, JOANNA FAIRCLOTH,**    *
**individually, KEVIN HENSLEY,**      *
**individually and in his official capacity**    *
**as Division Head of the Douglas County**   *
**Jail, M.O. HARPER, individually and**    *
**in his official capacity as Major of the**    *
**Douglas County Jail,**      *
**STAN COPELAND, individually and**    *
**in his official capacity as Chief Deputy**   *
**of the Douglas County Jail,**     *
**KENNETH TURNER, individually,**    *
**CHAD SKINNER, individually,**     *
**DWIGHT BELL, individually,**      *
**and SHEILA HUDSON, individually,**    *
   *
      **Defendants.**         *

---

## COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

---

COME NOW Plaintiffs, **TOMMY TURPEN, JR.** and **DAVID LOGAN TURPEN,** as Co-Administrators of the Estate of Tommy Eugene Turpen, by and through their attorney of record, H.L. Cromartie, III, H.L. Cromartie, III, P.C., 401 Broad Street, Suite 300, P.O. Box 1897, Rome, Georgia 30162-1897, and file this Complaint for Damages and Demand for Jury Trial against **DOUGLAS COUNTY** (hereinafter referred to as "Defendant Douglas County"), **TOM WORTHAN, individually and in his official capacity as Chairman of the Douglas County**

Board of Commissioners (hereinafter referred to as "Defendant Worthan"), **FREDDIE ASHMON, individually and in his official capacity as District 1 Douglas County Board of Commissioners** (hereinafter referred to as "Defendant Ashmon"), **KELLY ROBINSON, individually and in his official capacity as District 2 Douglas County Board of Commissioners** (hereinafter referred to as "Defendant Robinson"), **MIKE MULCARE, individually and in his official capacity as District 3 Douglas Board of Commissioners** (hereinafter referred to as "Defendant Mulcare"), **DAVID LATHAM, individually and in his official capacityas District 4 Douglas County Board of Commissioners** (hereinafter referred to as "Defendant Latham"), **ERIC LINTON, individually and in his official capacity as the Douglas County Administrator** (hereinafter referred to as "Defendant Linton"), **PHIL MILLER, individually and in his official capacity as Sheriff of Douglas County** (hereinafter referred to as "Defendant Miller"), **JIMMY GRAHAM, M.D., individually** (hereinafter referred to as "Defendant Graham"), **RENEE MORRIS, individually** (hereinafter referred to as "Defendant Morris"), **STEPHANIE EVANS, individually** (hereinafter referred to as "Defendant Evans"), **JOANNA FAIRCLOTH, individually** (hereinafter referred to as "Defendant Faircloth"), **KEVIN HENSLEY, individually and in his official capacity as Division Head of Douglas County Jail** (hereinafter

3

referred to as "Defendant Hensley), **M.O. HARPER, individually and in his official capacity as Major of the Douglas County Sheriff's Office** (hereinafter referred to as "Defendant Harper"), **STAN COPELAND, individually and in his official capacity as Chief Deputy of the Douglas County Sheriff's Office** (hereinafter referred to as "Defendant Copeland"), **KENNETH TURNER, individually** (hereinafter referred to as "Defendant Turner"), **CHAD SKINNER, individually** (hereinafter referred to as "Defendant Skinner"), **DWIGHT BELL, individually** (hereinafter referred to as "Defendant Bell"), and **SHEILA HUDSON, individually** (hereinafter referred to as "Defendant Hudson") and for their cause of action allege as follow:

## <u>PARTIES</u>

1.

Plaintiff **Tommy E. Turpen, Jr**. is an adult citizen of the United States and of Floyd County, Georgia, who was named Co-Administrator of the Estate of Tommy Eugene Turpen on November 4, 2008.

2.

Plaintiff **David Logan Turpen** is an adult citizen of the United States and of Carroll County, Georgia, who was named Co-Administrator of the Estate of Tommy Eugene Turpen on November 4, 2008.

4

3.

Defendant **DOUGLAS COUNTY** is a government entity located in the State of Georgia, and may be served in care of the Chairman of the Douglas County Board of Commissioners, Tom Worthan, at his principal office located at 8700 Hospital Drive, 3rd Floor, Douglas County Courthouse, Douglasville, GA 30134.

4.

Defendant **Tom Worthan** (hereinafter "Defendant Worthan") is a resident of the United States of America, a citizen and resident of the State of Georgia, and, based on information and belief, is currently residing in Douglas County, Georgia. At the time of the events complained of herein, Defendant Worthan was the Chairman of the Board of Commissioners of Douglas County, Georgia, and he is named both individually and in his official capacity as Chairman of the Board of Commissioners of Douglas County Georgia.   He may be served at his office located at 8700 Hospital Drive, Third Floor, Douglas County Courthouse, Douglasville, GA 30134.

5.

Defendant **Freddie Ashmon** (hereinafter "Defendant Ashmon") is a resident of the United States of America, a citizen and resident of the State of Georgia, and,

5

based on information and belief, is currently residing in Douglas County, Georgia. At the time of the events complained of herein, Defendant Ashmon was the District 1 Douglas County Commissioner of Douglas County, Georgia, and he is named both individually and in his official capacity as a member of the Board of Commissioners of Douglas County Georgia.   He may be served at his office located at 8700 Hospital Drive, Third Floor, Douglas County Courthouse, Douglasville, GA  30134.

6.

Defendant **Kelly Robinson** (hereinafter "Defendant Robinson") is a resident of the United States of America, a citizen and resident of the State of Georgia, and, based on information and belief, is currently residing in Douglas County, Georgia. At the time of the events complained of herein, Defendant Robinson was the District 2 Douglas County Commissioner of Douglas County, Georgia, and he is named both individually and in his official capacity as a member of the Board of Commissioners of Douglas County Georgia.   He may be served at his office located at 8700 Hospital Drive, Third Floor, Douglas County Courthouse, Douglasville, GA  30134.

7.

Defendant **Mike Mulcare** (hereinafter "Defendant Mulcare") is a resident of the United States of America, a citizen and resident of the State of Georgia, and, based on information and belief, is currently residing in Douglas County, Georgia. At the time of the events complained of herein, Defendant Mulcare was the District 3 Douglas County Commissioner of Douglas County, Georgia, and he is named both individually and in his official capacity as a member of the Board of Commissioners of Douglas County Georgia.  He may be served at his office located at 8700 Hospital Drive, Third Floor, Douglas County Courthouse, Douglasville, GA  30134.

8.

Defendant **David Latham** (hereinafter "Defendant Latham") is a resident of the United States of America, a citizen and resident of the State of Georgia, and, based on information and belief, is currently residing in Douglas County, Georgia. At the time of the events complained of herein, Defendant Latham was the District 4 Douglas County Commissioner of Douglas County, Georgia, and he is named both individually and in his official capacity as a member of the Board of Commissioners of Douglas County Georgia.  He may be served at his office

located at 8700 Hospital Drive, Third Floor, Douglas County Courthouse, Douglasville, GA 30134.

9.

Defendant **Eric Linton** (hereinafter "Defendant Linton") is a resident of the United States of America, a citizen and resident of the State of Georgia, and, based on information and belief, is currently residing in Douglas County, Georgia. At the time of the events complained of herein, Defendant Linton was the Douglas County Administrator for Douglas County, Georgia, and he is named both individually and in his official capacity as Douglas County Administrator. He may be served at his office located at 8700 Hospital Drive, Third Floor, Douglas County Courthouse, Douglasville, GA 30134.

10.

Defendant **DOUGLAS COUNTY SHERIFF'S OFFICE** is a law enforcement entity located in the State of Georgia, and may be served in care of Phil Miller, Douglas County Sheriff, at the Douglas County Sheriff's Office located at 6840 Church Street, Douglasville, GA 30134.

11.

Defendant **Phil Miller** (hereinafter "Defendant Miller") was at all times pertinent hereto the Sheriff of Douglas County and in charge of the medical care

required to be provided by Douglas County at the Douglas County Jail. He may be served at his residence located at 4240 Yancey Road, Douglasville, Georgia 30165-4008.

12.

Defendant **Dr. Jimmy Graham** (hereinafter "Defendant Graham") is a medical doctor licensed to practice medicine in the State of Georgia. Defendant Graham is contracted by the Douglas County Sheriff's Office on behalf of Douglas County to be the Medical Director of the Douglas County Jail. He has held that position since 2006. He may be served at his residence located in Fulton County at at 4644 Campbellton Raod, SW 166, Atlanta, Georgia 30331-6915.

13.

Defendant **Renee Morris** (hereinafter "Defendant Morris") was at all times pertinent hereto a nurse professional employed by the Douglas County Sheriff's Office to provide medical care on behalf of Douglas County to inmates in the custody of the Douglas County Sheriff's Office at the Douglas County Jail, and to both provide and/or obtain emergency medical care as medically necessary for said inmates. She may be served at her residence located at 7976 S Giles Road, Douglasville, Georgia 30135-5514.

9

14.

Defendant **Stephanie Evans** (hereinafter "Defendant Evans") was at all times pertinent hereto a nurse professional employed by the Douglas County Sheriff's Office to provide medical care on behalf of Douglas County to inmates in the custody of the Douglas County Sheriff's Office at the Douglas County Jail, and to both provide and/or obtain emergency medical care as medically necessary for said inmates. She may be served at her residence located at 4357 Green Manor Way, Douglasville, Georgia 30135-3688.

15.

Defendant **JoAnna Faircloth** (hereinafter "Defendant Faircloth") was at all times pertinent hereto a nurse professional employed by the Douglas County Office to provide medical care on behalf of Douglas County to inmates in the custody of the Douglas County Sheriff's Office at the Douglas County Jail, and to both provide and/or obtain emergency medical care as medically necessary for said inmates. She may be served at her residence located at 5517 Kilroy Lane, Douglasville, Georgia 30135-5333.

16.

Defendant **Kevin Hensley** (hereinafter "Defendant Hensley") was at all times pertinent hereto employed by the Douglas County Sheriff's Office as the

10

Division Head of the Douglas County Jail.  He may be served at his residence located at 202 Acres of Angels Path, Dallas, Georgia  30157-2303.

17.

Defendant **M.O. Harper** (hereinafter "Defendant Harper") was at all times pertinent hereto employed by the Douglas County Sheriff's Office as a Major of the  Douglas County Sheriff's Office.  He may be served at his residence located at 6234 Union Grove Road, Lithia Springs, GA  30122-1146.

18.

Defendant **Stan Copeland** (hereinafter "Defendant Copeland") was at all times pertinent hereto employed by the Douglas County Sheriff's Office as Chief Deputy.  He may be served at his residence located at 5001 Apple Valley Road, Douglasville, Georgia  30135.

19.

Defendant **Kenneth Turner** (hereinafter "Defendant Turner") was at all times pertinent hereto employed by the Douglas County Sheriff's Office as a Deputy.   He may be served at his residence located 7248 Brittany Way, Douglasville, Georgia  30134-4072.

11

20.

Defendant **Chad Skinner** (hereinafter "Defendant Skinner") was at all times pertinent hereto employed by the Douglas County Sheriff's Office as a Deputy . He may be served at his residence located at 2156 Terry Lane, Douglasville, Georgia 30135-1134.

21.

Defendant **Dwight Bell** (hereinafter "Defendant Bell") was at all times pertinent hereto employed by the Douglas County Sheriff's Office as a Deputy. He may be served at his residence located at 4076 Whistler Drive, Douglasville, Georgia 30135-3089.

22.

Defendant **Sheila Hudson** (hereinafter "Defendant Hudson") was at all times pertinent hereto employed by the Douglas County Sheriff's Office as a Deputy.  She may be served at her residence located at 68848 Cedar Mountain Road, Douglasville, Georgia 30135.

## JURISDICTION AND VENUE

23.

This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the Eighth and Fourteenth Amendments to the Constitution of the United States.  The

jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343 (3) and (4).

24.

Plaintiffs further invoke the pendant or supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367. Pursuant to O.C.G.A. § 36-11-1, notice of Plaintiff's claim was timely presented to Douglas County and the Douglas County Sheriff by certified letter dated March 26, 2009, a copy of which is attached hereto as Exhibit "A".

25.

Venue is proper in this Court because the conduct of the Defendants which forms the basis of Plaintiffs' Complaint occurred in the Northern Division of Georgia, Atlanta Division, and the Defendants all reside in the Northern Division of Georgia.

26.

The two year statute of limitations on this matter was tolled pursuant to O.C.G.A. §9-3-93 from the date of Tommy E. Turpen's death, June 16, 2008, until the appointment of Plaintiffs Tommy E. Turpen, Jr. and David Logan Turpen as Co-Administrators of the estate of Tommy Eugene Turpen on November 4, 2008, a period of 141 days.

## FACTUAL ALLEGATIONS

27.

From February 27, 2008 until March 13, 2008, Tommy E. Turpen was a prisoner of the Carroll County Jail.  On March 13, 2008, Tommy E. Turpen was transferred to the Douglas County Jail, which is operated by the Douglas County Sheriff's Office.

28.

From March 13, 2008 until June 13, 2008, a period of 92 days, Tommy E. Turpen was incarcerated at the Douglas County Jail.  According to the records of the Douglas County Sheriff's Department at the Douglas County Jail, when Mr. Turpen arrived at the Douglas County Jail he weighed either 140 pounds or 155 pounds.  Only three months later, when he was found to be voiding on himself and talking incoherently, he was summarily "released" from the Douglas County Jail, and taken to Wellstar Douglas Hospital, where, shortly thereafter, he was found to have weighed only 89 pounds.

29.

On June 13, 2008, he was transferred from Wellstar Douglas Hospital  to Wellstar Kennestone Hospital, where he died on June 16, 2008, as a result of multiple brain lesions, the largest of which measured 3.1 x 2.9 cm and was located

14

in the right front lobe, associated with brain cancer, a mass in the right lateral chest wall with rib destruction, innumerable bilateral intraparenchymal pulmonary nodules, two large masses along the left pulmonary base, two large extrapleural masses along the right 4th and 6th ribs w/ associated rib desctrution, extensive metastatic disease to the lumbar spine, lytic leasion at T9 and an area of osseous destruction along the anterior body of T2, as well as a lesion at T3 and extensive destruction at T6, acute renal failure, and cachexia.

30.

During the final three months of his life, until he was no longer able, Mr. Turpen made repeated desperate pleas for medical assistance and pain relief.  His pleas were ignored, as most clearly demonstrated by Dr. Graham's "assessment" of June 4, 2008, twelve (12) days before his death, that Mr. Turpen was "malingering."  Defendants were deliberately indifferent to the medical condition of Mr. Turpen as reflected herein.

**MR. TURPEN'S REQUESTS FOR TREATMENT**

31.

Mr. Turpen's requests for medical treatment and care from March 18, 2008, through June 13, 2008, consisted of the following nineteen (19) written requests:

15

1.  March 18, 2008:  "I have a knot on the right side of my chest that hurts very badly when I breath.  It hurts all the time but worse when I breath."  (A Douglas County Jail official responded that Mr. Turpen would be seen on 3-20-08.)

2.  March 25, 2008:  "Nurse Morris, This is Tommy Turpen, Sr., I have a gastric upstruck, which the ulcers ate my spinster musle up.  And that is why I have to have Zantac.  I have not received it in the last couple of days.  Could you find out why please."

    (On Mr. Turpen's request form the response charted was "reordered 3/25/08.")

3.  March 27, 2008:  "The right side of my chest, ribs and lung hurt badly when I breath.  I think it needs to be checked again.  Thank you very much.  When I sneeze it's like a knife is stabbing me or something."

    (Nurse Morris charted the following response on March 28, 2008 at 11:10 a.m.: "Continues to have discomfort rt side of chest.  Saw Dr. Graham - took all antibiotics.  Lungs clear.  BP 120/78.  Motrin 400 2 @ 0630 and 1830 x 5 days.")

4. April 1, 2008: "I am in the Cobb Douglas County Outpatient program seeing Dr. Battles, and I am having problems and need to see you please. Thank you."

(No response to this request appears to have been charted.)

5. April 8, 2008: "I need something for pain in my right side and chest. It feels like it's my lung. It hurts bad all the time. It is worse when I breath."

(Medical response charted by Defendant Nurse JoAnna Faircloth was: Motrin 400 2 BID X 5 d.)

6. April 11, 2008: "I take Eliville, 100 mg at nite and 50 mg in the morning. For some reason they only gave me 50 mg tonight and said no am? Check my medical chart. I came in with my medication."

(No medical response appears to have been charted.)

7. April 12, 2008: "Someone needs to check my past medical file. I came into this facility with medications that are prescribed to me. How can a intern take away my insulan and now my mental health medications. I need my medications. And I also have something very bad wrong with my right side and lung!"

(No medical response appears to have been charted.)

17

8. April 13, 2008: "I need pain medication. Thank you."

(No medical response appears to have been charted.)

9. April 15, 2008: "I need medication for pain, you were selling me motrin. Please refill it. Thank you."

(Medical response charted by Defendant Nurse JoAnna Faircloth was Motrin 400 for 5 days.)

10. April 21, 2008: "My right side is still hurting me badly all the way to my right foot. I need help with this. I've sent several medical forms already. Also, my left ear is stopped up. I can't hear anything out of it. Thank you."

(Medical response charted by unknown Douglas County Jail official was: "Doctor's List.")

11. April 25, 2008: "This is concerning pain medication. The motrin ran out plus this inflammatory isn't working. I've been up severe. I seen the doctor hurting. Also with my leg & back messed up can I get a double matt profile."

(Medical response charted on April 26, 2008 by Defendant Nurse Faircloth was: No extra mattress.)

12. April 26, 2008: "I need pain medication that the doctor said he was giving me. Said Nurutten & Flexaril. Who changed it? What I am getting is doing nothing, I'm not even getting motrain. I had a request for a double mat. I need to see the doctor again."

(No medical response appears to have been charted.)

13. April 27, 2008: "I am still in constant pain. And this is my third request for motrain to be refilled and the medication the doctor ordered Friday. He said Nurotten & Flexarile. I need to see him again please. Please I need a double mat due to serious pain back & legs."

(Medical response charted by Defendant Nurse Stephanie Evans was "The doctor only ordered you Clinoril that you are receiving." She also charted that 400 mg Motrin was prescribed twice a day for 7 days.)

14. April 29, 2008: "My right leg & foot & back feel like its on fire. The bottom of my foot feels like it's a blister. I need some muscle rub or ointment. I also need to see the doctor."

(Medical response charted by unknown Douglas County Jail official on April 30, 2008 was: "Saw Dr. has not even finished the meds.")

15. April 29, 2008: "I'm requesting stronger motrain than 400 mg. Also, muscle rub may help. Ms. Morris changed that but Ms. Faircloth

19

changed it back. I am in constant pain. I know what the doctor said to me. I need to see him again. I can hardly walk here. This is serious! Look on the cameras and you'll see. Ask the officers here, they will tell you. Thank you."

(No medical response appears to have been charted.)

16. May 2, 2008: "I am requesting medical help with (aches) in my hole body now, every muscle, bone deep. Both lungs hurt when I breath. I can't sleep, barely eat. I have a knot on my right chest. Whatever is wrong is getting worse."

(Medical response charted by Defendant Nurse Stephanie Evans was that "inmate doesn't want to see MD, wanted to receive a cold pack," and she prescribed a cold pack for 5 days.)

17. May 4, 2008: "I need pain medication. The Motrain has run out. Plus it wasn't strong enough at 400 mg. I also need a wheelchair or something to help me get around. My legs and back are locking up! I still need to see the doctor."

(Medical response charted by Defendant Chad Skinner, EMT, was "Nurse call," and he prescribed Motrin 400 mg twice a day for 7 days.)

18. May 5, 2008:  "I need something for pain.  And I still need to see the doctor.  I am hurting all over.  I need someone to give 2nd shift permission to give me something.  I hurt so bad it will bring tears to your eyes.  Thank you."

(Medical response charted by Defendant Nurse Renee Morris, and signed by Defendant Dr. Jimmy Graham was apparently charted on a "Patient Progress Report" dated May 5, 2008 as follows:  Mr. Turpen was laying in bed with his head propped up on a pillow against the wall.  Legs were crossed.  Mr. Turpen described a burning sensation in both legs and pain during ambulation.  Pulse was 98 at rest.  The nurse advised Mr. Turpen that his vital signs were "stable", that his Dilantin level was within normal limits and that he was in the doctor's list for the next week.  Clinoril was issued.)

May 5, 2008:  Mr. Turpen issued another request on May 5, 2008 on which he checked the box for "Medical Care", but made no other notes.

(Medical response charted by unknown Douglas County Jail official:  "Doctors List")

19. May 14, 2008: "Major Harper said you were going to help me.  Please do so Dr.  Please take me to the hospital.  I need my mental health medicine increased.  I can't sleep or eat."

(No medical response was charted, but he saw Defendant Dr. Jimmy Graham a week later on May 21, 2008, when Dr. Graham noted: Patient has no objective findings medically.  MST unchanged. Assessment: history of depression, seizure disorder.  Plan: Continue present meds. Tylenol 500 mg for 5 days.")

32.

According to the records of the Douglas County Sheriff's Office at the Douglas County Jail, there were no more pleas for assistance or relief from Mr. Turpen after May 14, 2008.  From May 15, 2008, until June 13, 2008, Mr. Turpen was in such bad shape that he could no longer request medical treatment or pain relief.

33.

In addition to the medical requests set out in paragraph 22, Tommy Turpen filed a Medical Grievance on April 19, 2008.  Mr. Turpen circled "emergency" as the nature of his medical need.  Mr. Turpen wrote "My name is Tommy Turpen, Sr.  I have medical problems that I take medication for.  Seizures is one.  I talked to

22

Nurse Morris yesterday and she was going to pull me out and check my dialanton level and blood sugar and pressure. My right side is drawing up. It's trebble pain, and its been going on for about a week now. I need help here. If you can't give me the medical help I need, you need to take me to the hospital for help!" This Douglas County Inmate Grievance Form indicates that it was received by Defendant Sgt. Hudson on April 23, 2008, and she notes at the bottom "last week saw Dr., clinoril."

34.

On May 1, 2008, Defendant Harper addressed Mr. Turpen's medical grievance in a memo wherein his response was as follows: "you saw the Doctor last week and he prescribed 'Clinoril.' What more do you want?"

35.

Mr. Turpen responded to Defendant Harper's memo by writing the following undated note, "Sir, what I want is something that will stop or at least ease the pain. I've written several medical requests since I've seen the doctor last week explaining that this Clinoril wasn't helping any. I've asked to see the Doctor again and been told I will not see the Doctor! Why is this. I am very sick over here Mr. Harper. I'm only asking for medical help which I am not receiving Sir. I am in so much pain in every muscle, joint, bone, that I can hardly walk. I can't sleep,

23

eat, lay down, stand up for any period of time.  I'm asking for help Major please.

Thank you Tommy Turpen, Sr, E-08."

36.

On May 4, 2008, Mr. Turpen filled out a second Douglas County Inmate Grievance Form and stated:  "Sir, I'm writing you this grievance due to medical care.  I take medications for seizures, mental health, ulsers and a back problem and high blood pressure.  All I've asked of medical is to give me the treatment I need. I also take 30/70 Humalin Insulan which was taken from me my first day here by Nurse Faircloth –The problem Sir, I am very sick over here.  I hurt in every muscle all the way to the bone.  And I only want medical treatment for what ever the problem may be.  I had to write one grievance already about getting my medications.  I'm sending you the response for Major Harper.  sir, I've never had to write a grievance in all the years I've been in jail and I don't want to now.  I'm indigent now because I have no help on the outside my people have passed away. Please help me with this situation Sir. Thank you.  Tommy E Turpen, Sr. 5/4/08."

37.

On May 6, 2008, Defendant Copeland, issued a memo regarding Mr. Turpen's medical grievance appeal and stated: "I have reviewed your grievance and medical records which indicate some problems in getting correct information

24

from you.  Your grievance states that you are a Diabetic and that you medication was taken from you and refused upon your entry into the jail. Your medical file indicates that you did not have any Diabetic medication and that your sugar levels were checked for a week and found to be normal.  The doctor has checked your condition and found no serious problem and only a series of normal aches and pains.  He has prescribed this medication you are now on for that condition which is proper medical care.  You were, again, placed on the doctor's list but voluntarily asked Nurse Evans to remove you on Saturday and all you needed was cold medication.  Your records indicate that you have received proper medical care and your grievance is unfounded."

38.

On May 13, 2008, in the Douglas County Jail Annex Book No. 24, the following incident is reported by an unknown Douglas County Jail official: "Tommy Turpen urinating in bottles stating he can not get out of bed.  Medical moved him back to population today.  He stated that we are refusing him medication because he is not able to walk to med cart."

39.

On May 16, 2008, in the Douglas County Jail Annex Book No. 24, the following incident is reported by an unknown Douglas County Jail official:

"10:34: medical was notified about Tommy Turpen being in pain. Turpen said that something inside him went down to his leg and busted. 16:13: Inmate Turpen stated his legs gave out on him and he'd falled down in the bathroom area, nurse notified of the incident. 16:35: #315 Capt Hensley, #312 Nurse Faircloth, on floor to check inmate Turpen, Tommy in E__ also #355 Nurse Evans. 16:45 Hensley & Faircloth off floor w/ Turpen."

40.

Also on May 16, 2008, an unknown Douglas County Jail officer recorded the following in Douglas County Jail Roll Call Book No. 8: "T. Turpen to 281 per medical, mattress has a couple of rips in it. Keep an eye on him over the weekend. Redd, Bell and Turpen given blankets per medical. "

41.

Also on May 16, 2008, Defendant Kenneth Turner recorded the following Jail Incident Report: "couple of inmates in the E dorm stated that inmate Turpen, Tommy Eugene Sr. had fallen in bathroom area. Deputy Keith Hayes went into the dorm and spoke with Turpen and was advised that he was using the bathroom until his legs gave out on him. Deputy Hayes went and advised medical of the incident. Medical had advised that they would come and check on him. Nurse Evans and Captain Hensley came over, spoke with Turpen who told them that he

26

couldn't move and that his back was in a lot of pain. l [Defendant Kenneth Turner] spoke with several of the inmates who advised me that Turpen was up last night around 3:45 a.m. walking around with no problem. The inmates wanted to remain anonymous. Captain Hensley and Nurse Evans escorted Turpen to the medical dorm."

42.

Again from May 15, 2008 until his transfer to Douglas Wellstar Hospital on June 13, 2008, Mr. Turpen was apparently unable to make any further written requests for medical treatment. Despite suffering from cancer in the lungs, brain, ribs and thoracic and lumbar spine for the three months that he was in the Douglas County Jail, Tommy Turpen was never given any narcotic pain medications.

## NOTATIONS AT THE DOUGLAS COUNTY JAIL BY DEFENDANTS GRAHAM, MORRIS, EVANS AND FAIRCLOTH (MEDICAL DOCTOR AND NURSES)

43.

On March 20, 2008, Defendants Graham and Morris noted on Mr. Turpen's patient progress report the following: "IM c/o knot on Rt side of chest with pain when breathing – R. Morris, RN." Dr. Graham stated, "x3 weeks, denies previous hx. O: slightly tender ….R chest wall, movable. A: Cyst chest wall. P: Naprosyn 500 mg, d.o. bid x 5 days."

44.

On April 24, 2008, Defendants Graham and Morris noted on Mr. Turpen's patient progress report the following: "IM c/o pain rt. sided leg pain w/ tightness. Also c/o Lt. ear being stopped up – R. Morris, RN." Dr. Graham stated, "O" tender reduceable LIH. Tender lower lumbar area; (-)SCR. A: 1) LIH 2) LBP 3) CPS. P: 1) Clinoril 200 mg PO BID x 7 days; 2) Dilantin level (done)."

45.

On May 5, 2008, Defendant Morris noted on Mr. Turpen's patient progress report the following: "Eval. completed on inmate – BP 130/88, pulse 98, pulse Ox 99%. Laying in bed w/ head propped up on wall/pillow. Noted Rt. leg across Lt. leg. Describes a burning sensation in both legs now w/ pain when ambulating. Advised inmate v.s. stable, Dilantin level w/nl & have placed in doctor list for this week. Motrin 400 mg placed on cart & Clinoril x 3 doses to assist w/ discomfort. Inmate denies any relief from clinoril given by physician."

46.

On May 7, 2008, Defendants Graham and Morris noted on Mr. Turpen's patient progress report the following:  "Im continues to c/o pain both legs unresolved by medication given. –R. Morris, RN." Dr. Graham states, "0700

tender lower lumbar area +SLR R.  A: Suspect DTD L-S spine. P: 1) Naprosyn 500

mg DO BID x 7 days 2) Robaxin 750 mg DO BID x 7 days."

47.

On May 21, 2008, Defendants Graham and Evans noted on Mr. Turpen's

patient progress report the following: "Current meds: Dilantin 300 mg; Elavil 50

mg at a.m. and 100 mg po  HS;  Zantac 150 mg. po BID.  IM states meds are no

longer working for depression. Unable to eat or sleep.—S. Evans, LPN.  Defendant

Graham states, "Office Note: Patient has no objective findings medically. MST

unchanged. Assess: HX of Depression, seizure disorder. Plan: Cont present meds.

Tylenol 500 mg for 5 days." This patient progress report was also signed by

Defendant Faircloth.

48.

On June 4, 2008, Defendants Graham and Morris noted on Mr. Turpen's

patient progress report the following: "Pain on ambulation. LBP noted.  A:

**Malingering**. LBP.  P: Naprosyn 500 mg, Flexeril 10 mg. PO Bid x 7 days."

Renee Morris, RN, noted on that same treatment date "IM says unable to walk."

49.

On June 12, 2008, Defendants Graham and Faircloth noted on Mr. Turpen's

patient progress report the following: "I/M c/o having hernia – Faircloth."

29

Defendant Graham writes: "D: manual tenderness L-S triangle x1 SLR.  No hernia noted.  A: Chronic LBP.  P: 1) Thorazine 50 mg PO BID. 2) Tylenol 500 mg PO BID.

50.

On June 13, 2008, other inmates reported that Mr. Turpen had begun voiding on himself and talking incoherently.  Defendant Morris's report states that Mr. Turpen "continued to complain of back pain with inability to get up from mat." She further reports that Mr. Turpen's "speech is mumble.  When assisting to get arm into uniform, inmate developed blank stare, stiffened arms and voided self. 911 contacted due to condition.  Pulse irregular.  Inmate transferred to Emory."

<h2 style="text-align:center">MR. TURPEN'S "RELEASE FROM JAIL"<br>AND TRANSFER TO HOSPITAL</h2>

51.

On June 13, 2008, after the inmates saw Mr. Turpen voiding himself and heard him talking incoherently, and after Defendant Morris saw Mr. Turpen develop a blank stare, a stiffening of his arms and voiding himself, Mr. Turpen was "released" by Defendant Copeland at 12:20 and transferred to Wellstar Douglas Hospital.

52.

At Wellstar Douglas Hospital it was determined that Mr. Turpen was suffering from brain cancer with brain hemorrhage, as well as lung cancer. Mr. Turpen was found to have a mass in the right lateral chest wall with rib destruction. Mr. Turpen was treated at Wellstar Douglas Hospital where he was diagnosed with brain cancer and lung cancer as well as acute renal failure on June 13, 2008, and subsequently transferred to Wellstar Kennestone Hospital that same day.

53.

Mr. Turpen was admitted to Wellstar Kennestone Hospital on June 13, 2008, and he died there on June 16, 2008, from multiple brain lesions, the largest of which measured 3.1 x 2.9 cm and was located in the right front lobe, associated with brain cancer, a mass in the right lateral chest wall with rib destruction, innumerable bilateral intraparenchymal pulmonary nodules, two large masses along the left pulmonary base, two large extrapleural masses along the right 4th and 6th ribs w/ associated rib destruction, extensive metastatic disease to the lumbar spine, lytic leasion at T9 and an area of osseous destruction along the anterior body of T2, as well as a lesion at T3 and extensive destruction at T6, acute renal failure, and cachexia.

54.

According to Douglas County Sheriff's Office records at the Douglas County jail, Mr. Turpen experienced significant weight loss during his incarceration. According to said records, Tommy E. Turpen weighed either 140 pounds or 155 pounds in March of 2008, but weighed only 88.8 pounds at the time of his autopsy on June 17, 2008, a weight loss of at least 51 pounds or 36%.

## COUNT I
## CONSTITUTIONAL CLAIMS
## DELIBERATE INDIFFERENCE

The allegations set forth in paragraphs 1 through 54 are restated and incorporated herein by reference.

55.

Despite Mr. Turpen's symptoms, dramatic weight loss, and his written requests and fervent pleas for medical treatment, pain relief, and treatment at a hospital, Defendants deliberately ignored his pleas and the serious medical needs of Mr. Turpen, and he was allowed to waste away and suffer in an inhumane manner while incarcerated at the Douglas County Jail.

56.

The symptoms reported by Mr. Turpen, his pain complaints, his repeated pleas for medical treatment and pain relief, and his repeated requests for treatment

32

at a hospital made it obvious that he was suffering from a serious medical condition and was in need of emergency medical evaluation, diagnosis and appropriate treatment and pain relief.

57.

No evaluation, diagnosis or treatment was provided to or arranged for Mr. Turpen by any of the Defendants except to the extent he was seen by Dr. Graham and the nurse Defendants, but the results of Dr. Graham's and the Defendant nurses' purported treatment were so obviously ineffective that even a lay person would have known that Mr. Turpen was in need of specialized medical diagnosis, treatment, and hospitalization, not to mention stronger pain medication.

58.

It was not until Mr. Turpen had reached the condition of being emaciated to 88.8 pounds and voiding on himself during seizures that he was summarily "released" from jail and transported to a hospital. At that point, there was nothing that could be done for Mr. Turpen, and he died within three days of his transport.

59.

Mr. Turpen was forced to endure severe pain and illness and his numerous pleas for help were ignored until he was virtually at death's door. The dramatic weight loss suffered by Mr. Turpen in just three short months, coupled with his

33

numerous pleas wherein he explained his pain in detail, requested medical treatment, additional pain medication and hospitalization, demonstrates a deliberate indifference to Mr. Turpen's serious medical needs on the part of the Defendants.

60.

As a result of the failure on the part of Defendants to act in an appropriate manner, Mr. Turpen's condition was such that all that was available to him at that point was for the medical staff at Kennestone Wellstar Hospital to administer Morphine to try and reduce his pain until he passed away.

61.

Defendants, their agents and employees, with knowledge of Tommy E. Turpen's serious medical needs and pain had a duty under the Eighth and Fourteenth Amendments to the United States Constitution to provide needed medical care to Tommy E. Turpen in conformity with the standards for delivery of such medical care in the State of Georgia as a whole.

62.

Defendants, their agents and employees, with knowledge of Tommy E. Turpen's medical needs acted with deliberate indifference to such medical needs by failing to provide medical care to Tommy E. Turpen in conformity with the

34

standard for delivery of such medical care in the State of Georgia as a whole and did, in fact, provide medical care which did not meet such standards thereby causing Tommy E. Turpen excruciating pain and suffering in violation of the rights secured to Tommy E. Turpen by the Eighth and Fourteenth Amendments to the United States Constitution.

63.

Defendant Graham was authorized to provide medical treatment, including narcotic pain medications, to request specialized care and treatment, and to summon emergency medical transportation for prisoner patients, including a patient such as Mr. Turpen, in the event that such was deemed necessary for a patient. He completely failed in that regard showing complete and deliberate indifference to the serious medical needs of Mr. Turpen, thereby proximately causing unnecessary and extreme pain and suffering for Mr. Turpen.

64.

Defendants Morris, Evans and Faircloth were authorized to provide medical treatment, to request specialized care and treatment, and to summon emergency medical transportation for prisoner patients, including a patient such as Mr. Turpen, in the event that such was deemed necessary for a patient. They completely failed in that regard showing complete and deliberate indifference to

35

the serious medical needs of Mr. Turpen, thereby proximately causing unnecessary and extreme pain and suffering for Mr. Turpen.

65.

Defendants Harper, Copeland, Hensley, Turner, Skinner, Bell, and Hudson were authorized to request medical care and treatment and to summon emergency medical transportation for prisoner patients, including a patient such as Mr. Turpen, in the event that such was deemed necessary for a patient.   They completely failed in that regard showing complete and deliberate indifference to the serious medical needs of Mr. Turpen, thereby proximately causing unnecessary and extreme pain and suffering for Mr. Turpen.

66.

The employees of Douglas County who received, evaluated and monitored Mr. Turpen during the time he was incarcerated at the Douglas County Jail were deliberately indifferent to the serious medical needs of Mr. Turpen in several respects during the period of time that Mr. Turpen was an inmate at the jail, including the following:

Defendants Miller, Graham, Morris, Evans, Faircloth, Harper, Copeland, Hensley, Turner, Skinner, Bell and Hudson were negligent in failing to promptly secure transport of Mr. Turpen from the jail to an emergency medical facility for

the purpose of assessing and responding to symptoms which he presented reflective of a serious medical condition. Mr. Turpen presented with complaints and symptoms which were so obvious and so obviously painful that they should have resulted in the transfer of Tommy E. Turpen to a hospital and in the provision of specialized medical care. His complaints and symptoms should have been treated as a medical emergency that requires immediate medical attention. The Defendants' failure to do so constitutes deliberate indifference to the serious medical needs of Mr. Turpen and proximately caused intense suffering by Mr. Turpen. (See Affidavit of Joseph E. Paris, PhD, MD, CCHP-A attached hereto as Exhibit B)

67.

The Defendants decision to fail to act or to summon any evaluation, diagnosis or treatment on an emergency basis for Mr. Turpen constituted deliberate indifference to Mr. Turpen's immediate medical need and thus constituted a breach of his Federal Constitutional right to be free from deliberate indifference to his need for medical care founded upon the Fourteenth and Eighth Amendments of the United States Constitution.

68.

As of March 2008, the decisional law provided that a delay in medical treatment to a person in custody where the need for such treatment is apparent constitutes deliberate indifference to that need for medical treatment.

69.

The Defendants' aforesaid actions and/or omissions were committed under color of law.

## DEFENDANTS WORTHAN, ASHMON, ROBINSON, MULCARE, LATHAM, LINTON, MILLER, HENSLEY, HARPER AND COPELAND CAUSED THE DELIBERATE INDIFFERENCE TO THE SERIOUS MEDICAL NEEDS OF TOMMY E. TURPEN

70.

Defendants Worthan, Ashmon, Robinson, Mulcare, Latham, Mulcare, Miller, Hensley, Harper and Copeland caused the deliberate indifference to the serious medical needs of Tommy E. Turpen by failing to adequately train and supervise the other Defendants concerning their duty to provide appropriate medical treatment and to take appropriate measures whenever special or emergency medical treatment was necessary.

71.

Said Defendants, knowing of the serious medical needs of Tommy E. Turpen, and knowing also of the inadequacies and deficiencies in the medical

facilities, staffing, and procedures at the Douglas County Jail, have a duty under the Eighth and Fourteenth Amendments to establish and implement policies, practices and procedures designed to assure that Tommy E. Turpen received medical care and treatment in conformity with the standards for delivery of such medical care and treatment in the State of Georgia as a whole. They failed to implement such policies, practices and/or procedures, and they failed to adequately train the other Defendants concerning these policies, practices and procedures thereby causing the Constitutional and State law violations suffered by Tommy E. Turpen.

72.

Said Defendants, knowing of the serious medical needs of Tommy E. Turpen, and with deliberate indifference to the inadequacies and deficiencies of the medical facilities, staffing and procedures of the Douglas County Jail failed and neglected to establish and implement policies, practices and procedures designed to assure that Tommy E. Turpen would receive medical care and treatment equal to standards found in the State of Georgia as a whole, or they adopted policies, practices and procedures which Defendants knew, or reasonably should have known, would be ineffective in delivering medical treatment and care at such standards, thereby endangering Tommy E. Turpen's health and well-being in

violation of rights secured to Tommy E. Turpen by the Eighth and Fourteenth Amendments to the United States Constitution and in violation of the laws of the State of Georgia.

73.

Said Defendants, knowing of the serious medical needs of Tommy E. Turpen had a duty under the Eighth and Fourteenth Amendments to the Constitution of the United States to instruct, supervise and train their employees and agents to assure delivery of medical care to Tommy E. Turpen which is consistent with the standards of medical care in the State of Georgia as a whole.

74.

Said Defendants, knowing of the serious medical needs of Tommy E. Turpen or with deliberate indifference to such needs, failed to instruct, supervise and train their employees and agents in such a manner as to assure the delivery of medical care to Tommy E. Turpen which was consistent with the standards of medical care in the State of Georgia as a whole.

75.

Said Defendants' aforesaid actions and/or omissions were negligent and/or reckless and/or intentional and caused the Eight and Fourteenth Amendment violations suffered by Tommy E. Turpen.

40

76.

The Defendants' aforesaid actions and/or omissions were committed under color of law.

## COUNT II

### PROFESSIONAL MALPRACTICE
### OF DR. JIMMY GRAHAM, NURSE RENEE MORRIS, NURSE STEPHANIE EVANS, AND NURSE JOANNA FAIRCLOTH

The allegations set forth in paragraphs 1 through 76 are restated and incorporated herein by reference.

77.

At the Douglas County Jail, Mr. Turpen had a painful stay. From March 18, 2008 to June 13, 2008, or about 3 months, Mr. Turpen generated 19 written health services requests and two Grievances complaining of a knot in the right side of the chest, pains on breathing, pains in the right leg, back and foot like being on fire. His deterioration progressed to the point that he could barely walk and eventually necessitated a wheelchair. He was seen by Dr. Graham on March 20, 2008, April 24, 2008, Mary 7, 2008, May 21, 2008, June 4, 2008 and June 12, 2008. (See ¶55 of the Affidavit of Joseph E. Paris, PhD, MD, CCHP-A, attached hereto)

78.

In addition to seeing Dr. Graham on six (6) occasions between March 18, 2008 and June 13, 2008, Mr. Turpen was seen by the nurses of the Douglas County Jail. The number of nursing visits with Mr. Turpen is difficult to calculate. For some visits a somewhat complete nursing encounter was charted, but for other visits nurses charted only a few words at the bottom of Mr. Turpen's medical service request. Sometimes Mr. Turpen's medical request would not be answered. Based on the records from the Douglas County Jail, Mr. Turpen was seen by Nurse JoAnna Faircloth on April 9, 2008, April 15 2008, April 26, 2008, May 16, 2008, May 21, 2008, June 12, 2008, and June 13, 2008. He was seen by Nurse Renee Morris on March 20, 2008, March 28, 2008, April 21, 2008, April 24, 2008, May 5, 2008, May 7, 2008, June 4, 2008, and June 13, 2008. He was seen by Nurse Stephanie Evans on April 27, 2008, April 28, 2008, May 3, 2008, and May 21, 2008. He was seen by Nurse Scott on March 26, 2008. He appears to have been seen by unidentified nurses on March 13, 2008, March 25, 2008, March 28, 2008, April 22, 2008, April 30, 2008, May 8, 2008, May 17, 2008, May 20, 2008, May 22, 2008, May 26, 2008 and May 27, 2008. (Paris Aff., ¶56)

79.

The care provided by Dr. Graham and nurses Faircloth, Morris, and Evans fell below the standard of care. While routine matters like hypertension and seizure disorder were addressed, the physician and nurses failed to take a complete history, which would have included Mr. Turpen's family history of fatal, aggressive, metastatic cancers. Some of these visits did not include vital signs. Examinations were cursory and devoid of neurological content. Pain medication prescribed consisted of anti-inflammatory or over the counter medications and afforded minimal or no relief. (Paris Aff., ¶57)

80.

Mr. Turpen's condition, particularly the last few weeks of his life, was such that it would warrant the strongest pain relievers available, anything less would not afford him relief from his extraordinarily painful condition. Mr. Turpen should have been receiving opiate pain relievers such as morphine or oxycontin, or possibly a regime consisting of both. The failure to provide these medications caused Mr. Turpen unnecessary pain and suffering and said failure fell beneath the standard of care required of any physician under these circumstances. (Paris Aff., ¶58)

81.

Based on a reasonable degree of medical probability, Mr. Turpen should have been receiving opiates as of at least April 19, 2008. (Paris Aff., ¶59)

82.

Based on a reasonable degree of medical probability, Mr. Turpen should have been seen by a specialist, or specialists, at least as of April 24, 2008. (Paris Aff., ¶60)

83.

Based on a reasonable degree of medical probability, Mr. Turpen should have been transferred to a hospital by at least April 27, 2008. (Paris Aff., ¶61)

84.

During his stay at Douglas County Jail Mr. Turpen was allowed to waste away to the point of death. The minimal treatment rendered to Mr. Turpen did not provide any significant pain relief. Mr. Turpen's only relief came when he was finally transferred to a hospital approximately 72 hours prior to his death. Due to the failure on the part of the physician and nurses to transfer Mr. Turpen by April 27, 2008, Mr. Turpen endured weeks of unnecessary suffering due to the medical malpractice of Dr. Graham and the nurses treating Mr. Turpen. (Paris Aff., ¶62)

85.

Dr. Graham was convinced that Mr. Turpen was malingering and charted so on June 4, 2008, only twelve (12) days before his death from overwhelming cancer with metastases (definition: the process by which cancer spreads from the place it originally arose as a tumor to other parts of the body) and cachexia (definition: loss of weight, muscle atrophy, fatigue, weakness and significant loss of appetite in someone not actively trying to lose weight. Cachexia physically weakens to a state of immobility).  As a result of his medically unsupported assessment of malingering, Dr. Graham provided no significant palliative care.  He also failed to order any tests, failed to consult with any specialists, and failed to engage in a differential diagnosis, all of which violated the standard of care under the circumstances.  (Paris Aff., ¶63)

86.

From the beginning of his Douglas County Jail stay, Mr. Turpen complained of the development of what he called "a knot" on the right side of his chest. Dr. Graham examined this mass (proven later on to be a large superficial cancer) on several occasions. However, the practitioner called this development "a cyst" and failed to elicit the patient's history for the condition, which would have revealed that the alleged "cyst" had grown rapidly and could be a cancer.  (Paris Aff., ¶64)

87.

Despite Mr. Turpen's steady weight loss (he was only 88 pounds when he died), Dr. Graham failed to comment on Mr. Turpen's cachectic looks or even to weigh the patient regularly. Dr. Graham failed to order x-rays of any kind, which are routine for patients rapidly developing disabling pain and mobility limitations. As an absolute minimum, a patient complaining of burning of the lungs, as Mr. Turpen had, should receive a chest-x-ray, but Mr. Turpen was not x-rayed at Douglas County Jail. (Paris Aff., ¶65)

88.

Attached hereto is the Affidavit of Joseph Edward Paris, PH.D., M.D., CCHP-A, Fellow of the Society of Correctional Physicians, licensed to practice medicine in the State of Georgia. Affiant became Board Certified in Internal Medicine in 1979, and is also Board Certified as a Correctional Care Health Professional (CCHP) and as a Certified Correctional Health Professional – Advanced (CCHP-A).

89.

Dr. Paris is familiar with the standard of care ordinarily employed by physicians and nursing staff who provide medical care to patients in a local detention facility or in a correctional facility. Dr. Paris is particularly familiar with

the standard of care for the provision of medical care to patients that are incarcerated in a local detention facility or in a correctional facility during an emergency medical situation, as well as the medical care provided in a clinic setting for chronic care patients who are incarcerated in a local detention or in a correctional facility. Dr. Paris is familiar with the standard of care to be employed by non-physician medical clinic personnel generally. This knowledge includes, but is not limited to, registered nurses and licensed practical nurses who provide care and treatment in a detention or correctional care medical setting.

90.

If a patient experiences symptoms indicative of cancer, it is imperative that medical attention be sought immediately. In this case, there was no effective response or appropriate attention to the cancer symptoms.

91.

Defendants Graham, Morris, Evans, and Faircloth owed Mr. Turpen a duty of care and a duty to act in accordance with the standard of care required of like and similar medical professionals. They breached that duty of care by deviating from and below the standard of care as described above.

92.

It is a departure from the standard of care ordinarily employed by reasonably

47

careful non-physician personnel including, but not limited to, registered nurses and licensed practical nurses, to fail to provide proper care and treatment in a clinic setting to a patient who has displayed abnormal symptoms, such as those displayed by Mr. Turpen, whether it be physical or psychological in appearance.

93.

The painful symptoms, daily complaints and dramatic weight loss suffered by Mr. Turpen in a relatively short period of time, March 13, 2008 through June 13, 2008, were indicative of a serious medical condition and as such the Defendants were negligent in that they ignored Mr. Turpen's obvious physical manifestations of a serious illness, his frequent pleas for treatment and until he was within three days of his death.  Mr. Turpen's condition had deteriorated to the point that he was unable to ambulate and his pain complaints were numerous and descriptive.  Mr. Turpen had an obvious cyst or mass on his rib cage which was observed by the employees of both Carroll County and Douglas County, which should have been examined to rule out cancer.  Time is of the essence when dealing with cancer.

## COUNT III

### (Negligent Supervision Retention and Hiring)

94.

The allegations set forth in paragraphs 1 through 93 are restated and incorporated herein by reference.

95.

Defendants WORTHAN, ASHMON, ROBINSON, MULCARE, LATHAM, LINTON, MILLER, HENSLEY, HARPER and COPELAND had the duty to properly supervise, retain, and hire their employees so that the actions of said employees did not cause harm to Tommy E. Turpen.

96.

Said Defendants breached said duty by failing to properly supervise, hire, and retain their employees concerning the constitutional rights of prisoners such as Tommy E. Turpen, and the proper care and treatment of the serious medical needs such as those of Tommy E. Turpen.

97.

Defendants breach of this duty to properly supervise, hire and retain their employees is the proximate cause of the unnecessary suffering of Tommy E. Turpen.

98.

Tommy E. Turpen was harmed by said breach in an amount to be determined at trial.

## COUNT IV

### (Intentional infliction of Emotional Distress)

99.

The allegations set forth in paragraphs 1 through 98 are restated and incorporated herein by reference.

100.

As set out above, the conduct of these Defendants was so cruel and unusual, so extreme and outrageous, and so insulting as naturally to cause humiliation, embarrassment, and fear on the part of Tommy E. Turpen.

101.

As a direct and proximate result of these Defendants' actions and omissions, Tommy E. Turpen was harmed both physically and mentally from the conduct described above which caused damage to the happiness, well-being, and peace of mind of Tommy E. Turpen. The amount of said harm is determined by the enlightened consciences of the jury.

## COUNT V

### (Punitive Damages)

102.

The allegations set forth in paragraphs 1 through 101 are restated and incorporated herein by reference.

103.

The above-mentioned actions of the Defendants herein evidenced willful misconduct, malice, fraud, wantonness, oppression, or entire want of care which would raise the presumption of a conscious indifference to consequences entitling the Plaintiffs to an award of punitive damages pursuant to O.C.G.A. §51-12-5.1.

### PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs pray**:

a. That the Plaintiffs be awarded compensatory and general damages as against each of the Defendants;

b. That the Plaintiffs be awarded punitive damages as against the individual persons named as Defendants;

c. That the Plaintiffs be awarded the costs of this action, including attorneys fees, as permitted by State and Federal law;

d. That this Court award such other and further relief as this Court deems

just and proper.

PLAINTIFFS DEMAND TRIAL BY JURY.

Dated this 14 day of June, 2010.

Respectfully submitted,
**H.L. CROMARTIE III, P.C.**

H.L. Cromartie, III, Esq.
Georgia State Bar No.: 197190
Attorney for Plaintiffs

P.O. Box 1897
401 Broad Street, Suite 300
Rome, Georgia 30162-1897
(706) 802-0251
(706) 802-0252 (Fax)